**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:**<br>**GALLERIA 2425 OWNER, LLC,**<br><br>**Debtor.** | ) | **Chapter 11**<br><br>**Case No. 23-34815** |
| **JETALL COMPANIES, INC. and 2425 WL, LLC,**<br><br>**Appellants,**<br><br>**v.**<br><br>**NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH,**<br><br>**Appellee.** | ) | **Civil Action No. 4:24-cv-04835** |

**APPELLANT'S BRIEF**

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant 2425 WL, LLC*

## TABLE OF CONTENTS

Table of citations .......... iv

Jurisdictional statement .......... v

Issues presented .......... vi

Preliminary statement .......... 1

Statement of the case .......... 3

A. Factual history .......... 3

B. Procedural History .......... 5

C. The Bankruptcy Court's Orders .......... 8

Summary of the argument .......... 9

Standard of review .......... 10

I. The Lien Release Order is moot because 2425 WL's lien had already been disallowed three different times. .......... 10

II. The Bankruptcy Court erred in entering the Permanent Injunction. .......... 13

A. The Court lacked power to enter the Permanent Injunction. .......... 13

1. The Court lacked personal jurisdiction over the parties subject to the injunction. .......... 13

2. The Court lacked power under the Bankruptcy Code to impose the injunction. .......... 15

B. The Court failed to follow the long-established requirements for obtaining permanent injunctive relief. .......... 16

1. The Court did not make findings, supported by record evidence, to support issuance of an injunction. .......... 16

2. The Permanent Injunction's terms are too vague and overbroad to be understood and applied. .......... 18

III. Both orders are inconsistent with relief awarded in other cases. .......... 21

1. The injunction violated the automatic stay imposed in two separate bankruptcies. .......... 21

2. The Bankruptcy Court's orders violated the order disqualifying the Bank's counsel. .......... 23

Prayer .......... 24

Certificate of service .......... 26

Certificate of compliance with type-volume limit .......... 27

## TABLE OF CITATIONS

## JURISDICTIONAL STATEMENT

This case arises from the Chapter 11 bankruptcy of Galleria 2425 Owner, L.L.C., which was filed on December 5, 2023. (ROA.000002.) The Bankruptcy Court had jurisdiction over the bankruptcy under 28 U.S.C. §§ 157(a)-(b), 1331, and 1334(a).

The Bankruptcy Court entered the orders on appeal on December 6, 2024. (ROA.009286, 009280, 009283.) On December 8, 2024, Appellant 2425 WL, LLC timely appealed these orders to this Court (ROA.009329), which has jurisdiction over the appeal under 28 U.S.C. § 158(a)(1).

## ISSUES PRESENTED

On December 6, 2024, the Bankruptcy Court issued the following Orders:

(1) the Memorandum Opinion dated December 6, 2024 (ROA.009276);

(2) the Order Granting NBK's Emergency (Renewed) Motion to Enforce Sale Order and Requiring Jetall Companies, Inc. to Vacate Property dated December 6, 2024 (ROA.009280); and

(3) the Order Releasing Deed of Trust Instrument No. RP-2021- 258619 dated December 6, 2024 (ROA.009283).

These orders give rise to the following issues:

I. Did the Court have jurisdictional, legal, factual, or evidentiary grounds to enter the Order Granting NBK's Emergency (Renewed Motion to Enforce Sale Order and Requiring Jetall Companies, Inc. to Vacate Property (ROA.009280)?

II. Did the Court have jurisdictional, legal, factual, or evidentiary grounds to enter the Order Releasing Deed of Trust Instrument No. RP-2021-258619 (ROA.009283)?

III. Did the Court have jurisdictional, legal, factual, or evidentiary grounds to enter the injunction contained within the Order Releasing Deed of Trust Instrument No. RP-2021-258619, which prohibits "2425 WL and any affiliated party, including without limitation Jetall Companies, Inc., Jetall Capital, LLC, Galleria 2425 JV, LLC, Galleria West Loop Investments II, LLC, Naissance Galleria, LLC, Naissance Capital Real Estate, LLC, and Mr. Ali Choudhri or other person or entity affiliated with any of the foregoing" from "bringing any action in any court challenging title to the Property?"

## PRELIMINARY STATEMENT

Injunctions are one of the law's most powerful weapons. A judge's power to declare conduct unlawful in an injunction, and then sanction a party for violating the injunction, presents a serious threat to individual liberty and great risk for potential abuse. That is why the Constitution prohibits courts from sanctioning a person for violating an injunction or restraining order unless they are provided the "elementary due process requirement of notice." *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016) (quoting Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2955). And fair notice requires that the injunction inform restrained persons of the conduct prohibited so that they can conform their behavior to the law. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[F]ounding of a contempt citation" will not occur "on a decree too vague to be understood.").

To ensure compliance with this constitutional command, every injunction or restraining order must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B) & (C) (made applicable in bankruptcy under Fed. R. Bankr. P. 7065). And federal courts will not issue the extraordinary relief of an injunction unless the party who seeks it makes a compelling case: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

These restrictions serve to prevent litigants from overreaching against their opponents—"hold[ing] the club of contempt forever over the other's head," *Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994)—and to prevent judges from acceding to those overreaching demands out of a sense of frustration or vengeance. Such judicial abuse of vague injunctions would "transform the contempt power from a 'potent weapon' into a 'deadly one.'" *New York Tel. Co. v. Commc'ns Workers of Am., AFL-CIO*, 445 F.2d 39, 48 (2d Cir. 1971) (quoting *Int'l Longshoresmen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

But in this case, the Bankruptcy Court issued a permanent injunction that violated every restraint designed to check abuses of the extraordinary power inherent in injunctive relief—and every limitation on bankruptcy courts' exercise of that power. The Bankruptcy Court permanently enjoined 2425 WL, its affiliates, and its owner, Ali Choudhri, from *ever* challenging title to a property in *any* legal proceeding. The property was not owned by the bankruptcy estate. And the owner of the property who sought the injunction was a complete stranger to the bankruptcy proceeding. It had no connection with the Debtor and did not even exist before the bankruptcy proceeding began. It was merely created to hold title to the property after obtaining it at auction. And the purchaser made no compelling case why the extraordinary relief of a permanent injunction was necessary: It claimed only that it desired the injunction to smooth the path for any potential sale. And that *claimed* purpose only disguised an even more dangerous one: the desire to moot 2425 WL's currently pending appellate challenge to the confirmation of the plan of liquidation that allowed the purchaser to obtain the property in the first place.

The enjoined parties are likewise strangers to this proceeding: None has taken any action in the bankruptcy proceeding beyond filing proofs of claim. None had been served with summons or other process.

The Bankruptcy Court did not make any of the findings required before the extraordinary relief of a permanent injunction can issue. And the injunction's vague terms make it impossible to understand precisely who is enjoined and exactly what conduct is prohibited.

No bankruptcy court in the country has ever granted relief anywhere near this broad—allowing one non-debtor to enjoin another from challenging title to property that has been sold and is therefore no longer part of the bankruptcy estate. Such matters lie beyond the jurisdiction and statutory powers that Congress has given to the bankruptcy courts.

For all these reasons, the Permanent Injunction must be reversed.

## STATEMENT OF THE CASE

### A. Factual history

This is a single asset real estate case in which the Debtor's sole asset is an office building located at 2425 West Loop South, Houston, Texas 77027, which was designed by the legendary architect I.M. Pei. (ROA.001506.) Appellant Jetall Companies, Inc. has held a lease covering the entire Eleventh Floor of the Property since 2015. (ROA.008941.) And the Property was originally owned by 2425 WL, LLC. The transaction at the center of this bankruptcy—and at the center of 2425 WL's claim—began when Appellant Ali Choudhri,

who owns Jetall and 2425 WL, and who once controlled the Debtor, sought to refinance the loan on the Property.

Choudhri faced an unfortunate obstacle in this effort: Lenders were reluctant to provide him a refinancing loan because of a fictitious lien that had been placed on the Property by Choudhri's vindictive former partner: Osama Abdullatif. (ROA.004344, 008986.)

Appellee National Bank of Kuwait, S.A.K.P., New York Branch (the "**Bank**") agreed to provide the money to refinance the debt through a sale of the Property to a newly created business entity—Galleria 2425 Owner, LLC (also owned by Choudhri), which would not be burdened by Abdullatif's fictitious liens. The Bank provided a $52 million first-priority mortgage loan to the Debtor. (ROA.004346.) And 2425 WL provided $14.7 million in junior secured seller-provided financing. (*Id*.)

But on December 5, 2023, the owner of the property, Galleria 2425 Owner, LLC, went into bankruptcy. (ROA.000002.) After the Bank succeeded in having the bankruptcy converted from a Chapter 11 reorganization to a Chapter 7 liquidation (ROA.007518-19), the Bankruptcy Court confirmed the plan of dissolution that the Bank had proposed (*See* ROA.003666**)** (the "**Plan**").

The Plan called for the Property to be sold at auction. (ROA.003674.) That sale was fully consummated. The Property was obtained by Houston 2425 Galleria, LLC ("the **Purchaser**"), an affiliate of the Bank. (*See* ROA.007520.) And on July 8, 2024, the Bankruptcy Court approved the sale and ordered the Property transferred to the Purchaser in its *Order* (*A) Approving Asset Purchase Agreement Between the Trustee and QB Loop*

*Property LP; (B) Approving the Sale of the Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (C) Approving Assumption and Assignment of Executory Contracts and Leases; (D) Determining the amounts necessary to cure such Executory Contracts, and Unexpired Leases; and (E) Granting Related Relief.* (the "**Sale Order**") (ROA.004005.)

The Plan also called for the cancellation of 2425 WL's lien on the property—invalidating its secured claim as an "insider" claim. (ROA.003677-78, 003655, 003684.) The Trustee then successfully brought a separate proceeding to cancel that lien. (ROA.004240.) The Sale Order *also* cancelled all "liens" on the Property. (ROA.004011.)

**B. Procedural History**

On December 2, 2024, more than six months after entry of the Sale Order, the Bank filed an "emergency" motion in which it sought to cancel 2425 WL's lien *again*—even though it had been thrice-cancelled already. (*See* ROA.007561, 007565.) And within that motion, the Bank also surreptitiously included a demand for a permanent injunction "enjoining and barring" 2425 WL, any "affiliated party" (including Jetall), and its owner Ali Choudhri from maintaining "an action in any court" to challenge "title" to the property. (ROA.007565-66.) The Bank claimed this relief was necessary because the Purchaser was "in the process of marketing the Property for sale" and claimed that certain unnamed "[t]itle insurers" would prefer to have any mention of 2425 WL's lien removed from the property records. (ROA.007563.)

NBK offered no justification at all why a permanent injunction was necessary *in addition* to the cancellation of 2425 WL's lien. The Bank served no summons on 2425 WL,

Jetall, Choudhri, or any of the other entities that would be subject to the proposed injunction. The Bank gave no reason why its request for a permanent injunction must be heard as an "emergency" on 3-days' notice. (ROA.007568.) And at the hearing on its motion, the Bank no evidence to establish the requirements for permanent injunctive relief. It identified no "irreparable injury" it would suffer in the absence of such relief. *eBay, Inc*., 547 U.S. at 391. It did not explain how "remedies available at law" would be "inadequate to compensate for that injury." *Id.* It and it did not explain how the "balance of hardships" and "public interest" favored its proposed injunctive relief. *Id.*

The Bank was also fully aware that its hasty "emergency" action for permanent injunctive relief might be in violation of the automatic stay in at least two bankruptcies. There is a separate bankruptcy proceeding that concerns a different entity affiliated with Ali Choudhri (Jetall's president), which is currently pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division, Cause No.: 24-10120-smr, *In re Texas REIT, LLC.* In that case, Osama Abdullatif, a litigant in an adversary proceeding pending in the Southern District stemming from the Texas REIT bankruptcy, alleged that the debtor in that case is an "alter ego" of Choudhri, and that all of Choudhri's other entities are also alter egos of Choudhri and each other—including "Jetall" and "2425 WL." (ROA.009031-32, 009033-34.). Just days before the Bank filed its initial emergency motion in this case, Judge Marvin Isgur determined that that the automatic stay protecting Texas REIT, LLC "probably applies" to all of Choudhri's affiliated entities. (ROA.009055-56.)

But Judge Isgur ultimately "abstain[ed]" from providing a definitive answer on that issue, referring the question instead to Judge Robinson, who is hearing the *In re Texas REIT, LLC* bankruptcy, making him the most appropriate person to determine the scope of the automatic stay in that action. (*See* Order Remanding Adversary Proceeding No. 24-03224 [ROA.009061] (Bankr. S.D. Tex.).)

Furthermore, on December 4, 2024, the day before the emergency hearing on the Bank's motion, Jetall itself became the subject of an Involuntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Western District of Texas, Austin Division, Cause No. 24-11544. (*See* ROA.009252, 009254.)

The Bank's counsel also brought its hasty request for emergency relief despite having been disqualified from representing the Bank in any proceeding against Jetall, one of the parties it sought to enjoin. In a state forcible entry and detainer action that the Bank brought to evict Jetall from the Property, the justice of the peace entered an order that disqualified the Purchaser's counsel, Jackson Walker, LLP, because that firm had represented Jetall in previous litigation and thus had a "conflict of interest." (ROA.009014, 009015.) That disqualification extended not only to Jackson Walker itself, but also expressly encompassed "its co-counsel" Pillsbury Winthrop. (ROA.9015.) And that disqualification went beyond the "the present case" pending before the justice court—the forcible entry and detainer—to include *any* case involving a "party in this case or the matters and issues relating thereto." (*Id.*) Jetall was a party in that case. The Purchaser was also a party in that case. Accordingly, Pillsbury Winthrop's continued representation of the

Bank and the Purchaser in this action is in direct, willful violation of the justice court's order.[1]

### C. The Bankruptcy Court's Orders

On December 6, 2024, the Bankruptcy Court entered an order granting all the relief that the Bank requested.[2] In that order, the court declared the deed of trust memorializing 2425 WL's lien to be "unenforceable and released" ("the **Lien Release Order**"). (Dkt. 872 at 2) And in the same order, the court entered a permanent injunction in the form the Bank provided (the "**Permanent Injunction**"), ordering that

> 2425 WL and any affiliated party, including without limitation Jetall Companies, Inc., Jetall Capital, LLC, Galleria 2425 JV, LLC, Galleria West Loop Investments II, LLC, Naissance Galleria, LLC, Naissance Capital Real Estate, LLC, and Mr. Ali Choudhri or other person or entity affiliated with any of the foregoing are enjoined and barred from bringing any action in any court challenging title to the Property.

(ROA.009284.) Neither the Permanent Injunction itself nor the Court's Memorandum Opinion Accompanying the Order provided any justification for the entry of the Permanent

---

[1] The day before the hearing on the Bank's motion to evict Jetall in the Bankruptcy Court, the state justice court entered an order purporting to clarify that Pillsbury was not among the counsel disqualified. (*See* ROA.009114.) But this order raised more questions than it answered. The order was not signed by the judge but was purportedly signed with permission. *Id.* It was never transmitted to counsel by the justice court. (ROA.009355 n.1.) And it was issued more than 30 days after the original order of disqualification and judgment in the eviction action. That put it outside the time period to appeal the disqualification order and outside the court's plenary power, which expired 21 days after entry of judgment. *See* Tex. R. Civ. P. 507.1. Accordingly, this order could not serve to expunge Pillsbury's disqualification.

[2] On the same date, the Bankruptcy Court also issued an order evicting Jetall from the property. (ROA.009280.) Jetall appealed this order as well, making it an appellant in this case. (ROA.009329.) But after Jetall entered Chapter 7 bankruptcy itself, a trustee was appointed to administer Jetall's estate, and the trustee has indicated that he does not plan to proceed with this appeal.

Injunction. And the Bankruptcy Court did not render any findings to show that the traditional factors for obtaining injunctive relief had been satisfied.

**SUMMARY OF THE ARGUMENT**

The Court should vacate both the Lien Release Order and the Permanent Injunction. The Lien Release Order has now been mooted three times over, because after the Bankruptcy Court had disallowed 2425 WL's lien in the Plan, and disallowing it on the trustee's motion, and then invalidated all lines on the Property with the Sale Order, the court could no longer grant any effective relief on the Bank's separate demand to disallow that lien. That renders the Bankruptcy Court's disallowance of 2425 WL's lien a legal nullity.

The problems with the Permanent Injunction run even deeper. The Bankruptcy Court lacked jurisdiction to even consider that injunction because the court never *obtained* personal jurisdiction over the enjoined parties. And the court *lost* jurisdiction over the subject matter of the injunction once the Property was sold to the Purchaser and ceased being property of the bankruptcy estate. The Bankruptcy Court's failure to render the findings necessary to support permanent injunctive relief provides an independent reason why the Permanent Injunction is unenforceable. And the vague, open-ended, and overbroad terms of that injunction, which cover every "affiliated party" to 2425 WL, and prohibits them from undertaking "any action in any court" to challenge "title" to the Property, renders the injunction unenforceable as well—because it is impossible to tell what *degree* of "affiliation" is necessary to bring a person within the injunction's terms, and what degree of "title" challenge is prohibited.

Finally, the Lien Release Order and the Permanent Injunction violate the automatic stay in two separate bankruptcies and were brought by counsel that have been disqualified from seeking those orders. And the transparent purpose of both orders is not merely to grease the skids for a potential sale by preventing 2425 WL or its "affiliates" from bringing new actions that might interfere with such a sale, but instead to invalidate 2425 WL's currently pending challenge to the Bank's plan of liquidation. And that purpose is wholly illegitimate.

For all these reasons, the Court should vacate both the Lien Release Order and the Permanent Injunction.

## STANDARD OF REVIEW

The entry of a permanent injunction is reviewed for abuse of discretion, *Justin Industries, Inc. v. Choctaw Secur. L.P.*, 920 F.2d 262, 266 & n.4 (5th Cir. 1990), although a court will abuse its discretion if it "relies on clearly erroneous factual findings"; "relies on erroneous conclusions of law;" or "misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) (internal quotation omitted). "Issues of statutory interpretation"—which are involved in this appeal—"are [questions of law] reviewed de novo." *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 652 (5th Cir. 2010) The same is true of "mixed questions of fact and law." *In re Nat'l Gypsum Co*., 208 F.3d 498, 504 (5th Cir. 2000).

## I. The Lien Release Order is moot because 2425 WL's lien had already been disallowed three different times.

The Plan that the Bankruptcy Court confirmed in this case has already disallowed

2425 WL's lien against the Debtor by disallowing 2425 WL's secured claim as an "insider" claim—providing that 2425 WL "shall not receive or retain any property" on account of its claim. (ROA.003677-78, 003655, 003684.) The Bankruptcy Court separately disallowed that claim *again* in a different order, deeming the Deed of Trust memorializing that lien to be invalid. (*See* ROA.004240-41.) And the Sale Order disallowed 2425 WL's lien once again, by cancelling *all* "liens" on the property. (ROA.004011.) That means when the Bankruptcy Court issued the Lien Release Order, there was no pending lien for the Court to disallow, rendering the Bank's further effort to disallow 2425 WL's lien *again* ineffective and moot.

The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live "case" or "controversy." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "Accordingly, to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013). This case-or-controversy requirement persists "through all stages of federal judicial proceedings." *Id.* at 172.

If an event renders the court unable to grant the litigant "any effectual relief whatever," the case is moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996). Accordingly, the Bank's motion to disallow 2425 WL's lien became moot after the Bankruptcy Court disallowed 2425 WL's claim in confirming the Plan. It *surely* became moot once the Bankruptcy Court invalidated that lien again on the Trustee's motion. And if any doubt remains, it must be dispelled by entry of the Sale Order. At that point, the Bankruptcy Court

could no longer grant any effectual relief on the Bank's identical demand for disallowance of the same claim.

Where "full relief is accorded by [a] tribunal," then a subsequent "proceeding seeking the same relief is moot." 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3533.2, at 241 (2d ed. 1984). For instance, a request for preliminary injunction is rendered moot when a permanent injunction is entered. *See Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1555-56, 1558 (11th Cir. 1987) (preliminary injunction against city's discriminatory permitting scheme was moot after court awarded "primary relief sought," a permanent injunction). And just as a court cannot enjoin an action that has already been enjoined, a court cannot disallow a lien that has already been disallowed.

Indeed, the true purpose behind the Trustee's motion to disallow 2425 WL's lien was not to disallow an already-disallowed lien, but instead to moot 2425 WL's pending appeal of the order confirming the Plan. *See 2425 WL, LLC v. Nat'l Bank of Kuwait, S.A.K.P., New York Branch*, No. 24-20541 (5th Cir.). That effort will be fruitless. Even if 2425 WL's lien is disallowed, and it was unable to challenge the Plan's disallowance of its secured claim, 2425 WL will retain standing to challenge the Plan's confirmation because 2425 WL has challenged the provisions in the Plan releasing claims that 2425 WL possesses against other non-debtors and subjecting them to bankruptcy court "gatekeeping" approval. *See id*. Dkt. 39 at 29-39. The fact that the Plan thereby denies 2425 WL any right of monetary recovery on those causes of action constitutes a "pecuniary" injury that is sufficient to convey standing. *In re Dean*, 18 F.4th 842, 844 (5th Cir. 2021); *Cf. Truck*

*Insurance Exchange v. Kaiser Gypsum Co.*, 144 S. Ct. 1414, 1424 (2024) (Plan's provisions creating and governing the trust "directly and adversely affected" the insurer's pecuniary interests in a manner sufficient to convey standing, even though the insurer was not a creditor). Yet even though this effort will not have its intended effect, the Trustee's pursuit of it is unjust, and it should not be sanctioned by this Court.

## II. The Bankruptcy Court erred in entering the Permanent Injunction.

There are also a variety of reasons why the Bankruptcy Court lacked the substantive power to enter the Permanent Injunction against 2425 WL, its affiliates (including Jetall), and its owner Choudhri.

### A. The Court lacked power to enter the Permanent Injunction.

The first problem with the Permanent Injunction is that the Bankruptcy Court did not have jurisdiction over either the parties to, or the subject matter of, any action to enter any injunction against the enjoined parties.

#### 1. The Court lacked personal jurisdiction over the parties subject to the injunction.

In order to enter an injunction against a party, a court must have both "subject matter jurisdiction and 'in personam jurisdiction over the party against whom the injunction runs'"—which requires, at a minimum, "'‘effective service of process.'" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) (quoting 7 J. Moore, J. Lucas & K. Sinclair, Jr., MOORE'S FEDERAL PRACTICE ¶ 65.03[2], at 65–25 (1985)). For that reason, the Federal Rules of Bankruptcy Procedure make "a proceeding to obtain an injunction" an "adversary proceeding"—just like a civil action in federal district court. *See* Fed. R. Bankr. P. 7001(g). And that requires issuance and service of

process in the same manner as a civil action under the Federal Rules of Civil Procedure. *See generally* Fed. R. Bankr. P. 7004; *id*. 7004(a)(1) (making most of the provisions of Fed. R. Civ. P. 4 applicable “in an adversary proceeding”).

Yet none of the parties enjoined by the Permanent Injunction is a debtor in this case. None has been served with any summons or citation. And none made any voluntary appearance. The Bankruptcy Court determined that “Jetall has subjected itself to jurisdiction” because it filed “two” “proofs of claim” in the subject bankruptcy case (ROA.009278) and other enjoined parties filed proofs of claim as well (*see* ROA.003655). But that is wrong. It is settled that the mere filing of a proof of claim in a bankruptcy case does not constitute a voluntary appearance or subject a creditor to the bankruptcy court’s personal jurisdiction for all purposes. “[B]y submitting a claim against the bankruptcy estate,” parties subject themselves only to the bankruptcy court’s “equitable power to [allow or] *disallow [that] claim[]*.” *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) (emphasis added) (citing *Katchen v. Landy*, 382 U.S. 323, 335 (1966)). They do not subject themselves to the bankruptcy court’s power for matters *beyond* adjudicating that claim. Accordingly, none of the entities who submitted proofs of claim submitted themselves to the Bankruptcy Court’s personal jurisdiction for an action to obtain an injunction action separate and apart from the main bankruptcy action in which their proofs of claim were adjudicated. And of course, the remaining parties who *did not* file proofs of claim did not submit themselves to the Bankruptcy Court’s jurisdiction either. The Bankruptcy Court therefore lacked power to enjoin any of the enjoined parties.

### 2. The Court lacked power under the Bankruptcy Code to impose the injunction.

The Bankruptcy Court also did not have any jurisdiction over the subject matter of this case under 28 U.S.C. § 1334. This is an action by one non-bankrupt party enjoin other non-bankrupt parties from contesting title to a building that—as the result of a foreclosure sale by which the Purchaser has now obtained the Property—is no longer property of the bankruptcy estate. "Bankruptcy jurisdiction, at its core, is *in rem*." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006); *see also Gardner v. New Jersey,* 329 U.S. 565, 574 ("The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*."). Accordingly, "bankruptcy court jurisdiction covers only property in which the debtor has an interest," and no such interest remains after the debtor loses the property "in a foreclosure sale." *Coleman v. Williams*, 538 Fed. App'x 513, 514 (5th Cir. 2013) (per curiam). Accordingly, once the Property was sold at auction, the Bankruptcy Court lost any authority to consider matters that might affect the property and those with an interest in it. And that means the Court has no jurisdiction to enter the Permanent Injunction.

The Bankruptcy Court concluded otherwise, claiming that its jurisdiction to evict Jetall arose out of its authority to "enforce[]" the "Sale Order." (ROA.003655.). But the present action has absolutely *no* connection to the Sale Order. The entire purpose of the Sale Order was to facilitate an auction that has already occurred. (*See* ROA.004008-09.) The parties bid at that auction, and the conclusion of that process, the Purchaser emerged as the winner. (*Id.*) The Sale Order completed and approved that sale, providing for its final

"approval and consummation" (ROA.004015), and allowing the sale to close. (ROA.004007.) The Bankruptcy Court did not interpret, construe, or apply any provision of the Sale Order in entering the Permanent Injunction. And the Sale Order contains no provisions that direct, regulate, or even contemplate further sales beyond the sale to the Purchaser. So the Bankruptcy Court could not claim that actions taken to facilitate future sales fall within the Sale Order's substantive provision. It simply purports to make it easier for one non-debtor to sell the property to another non-debtor--by prohibiting 2425 WL and its affiliates from ever taking any action to challenge title.

Indeed, the only property transfer that the Sale Order effectuates is one from the bankruptcy estate to the Purchaser. And in that sense, the Sale Order *stripped* the Bankruptcy Court of jurisdiction rather than conveys it. By transferring the Property out of the bankruptcy estate, the Sale Order ensured that nothing that happens to the Property will have any effect on the estate. And that means the Sale Order cannot provide the jurisdictional link that is otherwise missing in this case.

### B. The Court failed to follow the long-established requirements for obtaining permanent injunctive relief.

Beyond the fact that the Bankruptcy Court lacked jurisdiction to enter the Permanent Injunction, it also failed to follow the longstanding requirements for obtaining injunctive relief.

#### 1. The Court did not make findings, supported by record evidence, to support issuance of an injunction.

The provisions of Federal Rule of Civil Procedure 65 are applicable in any adversary proceeding for injunctive relief in bankruptcy court. *See* Fed. R. Bankr. P. 7065 (providing

that "Fed. R. Civ. P. 65 applies in an adversary proceeding"). An injunction entered by a bankruptcy court therefore must comply with Rule 65(d)'s requirement that "[e]very order granting an injunction ... shall set forth the reasons for its issuance." And the bankruptcy court must make findings "explicitly applying the traditional equitable standard" for obtaining equitable injunctive relief. *NRDC v. Texaco Refining & Marketing, Inc.*, 906 F.2d 934, 937 (3d Cir. 1990); *see also Town of Huntington v. Marsh*, 859 F.2d 1134, 1143 (2d Cir. 1988).

The Bankruptcy Court neither explained why the extraordinary remedy of an injunction was necessary, nor did it explain why that injunction must be *permanent*—outlasting even the sale that the Purchaser wanted to facilitate. Nor did the Bankruptcy Court examine the traditional equitable factors for obtaining an injunction. It identified no "irreparable injury" that the Bank would suffer in the absence of injunctive relief. *eBay, Inc.*, 547 U.S. at 391. It did not explain how "remedies available at law" would be "inadequate to compensate for that injury." *Id.* The Bankruptcy Court also failed to "balance the competing claims of injury [and] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). This failure to comply with Rule 65(d) deprives Appellants and this Court of a "basis for appellate review." *Allied Marketing Group v. CDL Marketing*, 878 F.2d 806, 810 (5th Cir. 1989); *Thermo Electron Corp. v. Schiavone Constr. Co.*, 915 F.2d 770, 773 (1st Cir. 1990). And for that reason, the injunction must be vacated. *See United States v. Rohm & Haas Co.*, 500 F.2d 167, 175 (5th Cir. 1974); *Sierra Club v. FDIC*, 992 F.2d 545, 547 (5th Cir. 1993); *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.

1989).

### 2. The Permanent Injunction's terms are too vague and overbroad to be understood and applied.

Rule 65 also requires that the prohibitions included in an injunction "delineate definite and specific mandates," *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 573, 578 (5th Cir. 2000) (internal quotation omitted), stating their terms "'specifically' and 'describ[ing] in reasonable detail' the "conduct restrained or required." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting Fed. R. Civ. P. 65(d)(1)). "The drafting standard has been described as 'that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'" *Id.* (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975)). This "ordinary person" standard "embodies the elementary due process requirement of notice." *Id.* at 212 (quoting *U.S. Steel*, 519 F.2d at 1246). And compliance with the standard must be determined from the "four corners" of the injunction itself. *Seattle-First Nat'l Bank v. Manges*, 900 F.2d 785, 800 (5th Cir. 1990) (internal quotation omitted).

But the terms of the Permanent Injunction are too vague and overbroad for the ordinary person to understand and apply. The operative terms of the injunction prohibit 2425 WL, any "affiliated party," and any "person or entity *affiliated*" *with* those affiliates from bringing "any action in any court challenging title to the Property." (ROA.009284.) Those terms present a nesting doll of vagueness.

The first problem is that the injunction is vague about the parties that are subject to its prohibitions. The injunction covers certain specified parties along with 2425 WL's

"affiliated parties." But the term "affiliated" is not defined in the Permanent Injunction. And that term has frequently been determined to be too vague to create enforceable obligations. *See Porter v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:25-CV-03011-SEM-DJQ, 2025 WL 1984269, at *11 (C.D. Ill. July 17, 2025) ("[S]tandard clauses that purport to cover *general affiliates* ... are too vague to establish" an intended third-party beneficiary.) (emphasis added); *Isernia v. Danville Reg'l Med. Ctr., LLC*, No. 4:22-CV-00022, 2024 WL 4697681, at *4 (W.D. Va. Nov. 6, 2024) ("The Court is simply unpersuaded that the Agreement's vague reference to *'affiliates'* reveals the signatories' intent to benefit BMW NA.") (emphasis added); *Palomo v. DeMaio*, No. 515CV1536LEKTWD, 2017 WL 6001825, at *4 (N.D.N.Y. Dec. 4, 2017) ("[T]he Court rejects Counter-Plaintiffs' argument that the NDAs' vague reference to "*any other affiliates*" suggests that all Counter-Plaintiffs are intended beneficiaries.") (emphasis added).

For good reason. The term has multiple meanings. One of these is a legal definition: "A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024). But the term also has a more common definition of having a "close connection." *See* Mirriam Webster Dictionary Online. And the latter definition is especially vague, because there is no set standard for determining how "close" a person or entity must be to qualify as an affiliate. And the vagueness of that term is only multiplied by the fact that it is used twice in the Permanent Injunction, reaching not only 2425 WL's "affiliates" but also any "person or organization affiliated" *with* those affiliates. That casts a wide net

of people and organizations that might be subject to the injunction—incorporating anyone within two degrees of connection to 2425 WL. But it is impossible to tell how wide the net might be, because it is impossible to know which connections are close enough to count. That is impossibly vague.

The Permanent Injunction is also vague about the conduct it prohibits. The injunction prohibits "bringing any action in any court"—a phrase that could refer either to *newly* filed proceedings brought directly to interfere with a potential sale of the Property by the Purchaser, or *previously* filed proceedings that never even contemplated that sale. The injunction also bars any "challenge" to "title," but it is unclear whether that refers to the title possessed by the Purchaser, the title possessed by anyone the Purchaser transfers title, or the title of *anyone* in the chain of title. The prohibition against challenging "title" is similarly unclear about whether it refers to proceedings in which title is attacked *directly* or simply those in which title might be implicated *indirectly*—such as in 2425 WL's current challenge to the Plan Confirmation, which, if reversed, could require that the Property be returned to the estate. Accordingly, the Permanent Injunction could theoretically be used by the Bank as yet another weapon to try and prevent the appellate challenge to the Plan's confirmation from going forward—when the Bank has never offered any legitimate justification for preventing that appeal from going forward.

For all these reasons, it is impossible for the ordinary person to know which persons or organizations are subject to the Permanent Injunction, and precisely what conduct is prohibited. And this is yet another reason the Permanent Injunction must be vacated.

## III. Both orders are inconsistent with relief awarded in other cases.

Finally, both the Lien Release Order and the Permanent Injunction are inconsistent with relief that has been awarded in other cases.

### 1. The injunction violated the automatic stay imposed in two separate bankruptcies.

The orders imposed by the Bankruptcy Court implicate the rights of 2425 WL and its affiliates rights under two different bankruptcies. The first is the bankruptcy of Jetall itself, which is listed an affiliate of 2425 WL in the Permanent Injunction. The second is the automatic stay in the Texas REIT bankruptcy. Judge Isgur determined that that the automatic stay protecting Texas REIT "probably applies" to all of Choudhri's affiliated entities—including both 2425 WL and Jetall, although he left final determination of that issue for Judge Robinson. (ROA.009055-56.) And Judge Isgur's instincts are entirely correct.

Generally, the automatic stay does not extend to protect non-debtor parties. *See Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 692 (Tex. App. 1996); *HBA East, Ltd. v. JEA Boxing Co.*, 796 S.W.2d 534, 536 (Tex. App. 1990). But raising the allegation that one company is an alter ego of another does trigger the automatic stay under 11 U.S.C. § 365(a)(3) when one of those entities is a debtor in bankruptcy. The doctrine of alter ego "is one distinct method of piercing the corporate veil." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). Alter ego applies when "there is such unity between corporation and individual" (or such unity between one corporation and another) "that the separate identity of the

corporation has ceased, and holding only the corporation liable would result in injustice." *Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345 (5th Cir. 1987) (quoting *Castleberry*, 721 S.W.2d at 272)). As a consequence of the doctrine's application, the "assets and liabilities" of one entity become the "assets and liabilities" of another. *State v. DeSantino*, 899 S.W.2d 787, 790 (Tex. App. 1995).

Accordingly, where, as here, numerous entities and individuals are alleged to be alter egos of a bankrupt debtor, that makes the assets and liabilities of the alter egos the assets and liabilities of the estate. *See Pisculli v. T.S. Haulers, Inc.*, 426 B.R. 52, 60 (E.D.N.Y. 2010) ("[A] court may pierce the corporate veil of a business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate[] under an alter ego theory.").

That means any attempt to restrain the behavior of one of the alter egos (either through the Permanent Injunction or the Lien Release Order) is subject to the automatic stay. After all, the automatic stay imposed by 11 U.S.C. § 362 prohibits not only claims against the debtor itself under section 362(a)(1), but also prohibits any "act" to "exercise control over property of the estate" under section 362(a)(3). For that reason, numerous cases have held that a non-frivolous allegation of alter ego makes the alleged alter egos subject to the automatic stay. *See, e.g.*, *In re Adler*, 494 B.R. 43, 53 (Bankr. E.D.N.Y. 2013) (holding that claims against alleged alter egos were subject to the automatic stay because the debtor and its alter egos "were at all relevant times one and the same entity"); *Sky Cable, LLC v. DIRECTV, Inc.*, 23 F.4th 313 (4th Cir. 2022) (noting that bankruptcy court had denied a motion for post-judgment attorneys' fees against debtor "and his alter egos

because such an award was precluded by the bankruptcy court's automatic stay").[3] The Bankruptcy Court should have followed these other courts' lead and held that all claims against all individuals and entities that are alleged to be alter egos of Ali Choudhri—including Jetall and 2425 WL—are subject to the automatic stay.

But the Bankruptcy Court refused to hold that the stay applied "[a]bsent an order extending the stay in the Texas REIT, LLC [bankruptcy] to this case," even though no such motion is required to trigger operation of the automatic stay—which is why it is called "automatic." (ROA.003655.) The Bankruptcy Court's impulsive decision to impose the Permanent Injunction and the Lien Release Order before now risks rendering the orders imposed by the Bankruptcy Court ineffective—because any such order would be a violation of the automatic stay and could be void. *See Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex. 1992); *see also Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988) (per curiam) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940)).

**2. The Bankruptcy Court's orders violated the order disqualifying the Bank's counsel.**

The Bank was also prohibited from obtaining the orders obtained by the Bankruptcy Court because their counsel Pillsbury Winthrop has been disqualified by the justice court from handling any case involving Jetall. (*See* ROA.009014, 009015.) The Bankruptcy

---

[3] Indeed, the only cases that have held that alter egos *were not* subject to the automatic stay analyzed only whether the alter egos were actually "the debtor" under section 362(a)(1), rather than considering whether claims against the alter egos fell under section 362(a)(3) because they sought to "control property of the estate." *See, e.g.*, *In re Meyerland Co*., 82 B.R. 831 (Bankr. S.D. Tex. 1988); *Pavers & Road Builders Dist. Council Welfare Fund v Core Contracting of N.Y., LLC*, 536 BR 48, 51 (Bankr. E.D.N.Y. 2015). The analysis of these cases is incomplete and therefore unpersuasive.

Court ignored the justice court's order, deeming Jetall's request to disqualify Pillsbury Winthrop to be waived because the parties had not filed a separate motion to disqualify Pillsbury Winthrop in the Bankruptcy Court. (ROA.003655.) But the justice court's disqualification was automatic—requiring no further order. And the Bankruptcy Court was required to give the same respect to the justice of the peace's order as a "state district court" would "in a later suit" concerning the property. *See Knoles v. Wells Fargo Bank, N.A.*, 513 Fed. App'x 414, 416 (5th Cir. 2013) (per curiam). The Bankruptcy Court was therefore barred under the *Rooker-Feldman* doctrine from entering a ruling that differs from the disqualification ruling of the justice court. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). Pursuant to that doctrine, "federal district courts lack jurisdiction to review state-court judgments by means of a state-court loser's collateral attack." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). And bankruptcy courts do too.

The Bank is precisely the sort of "state court loser[]" shopping for a new federal forum that the *Rooker-Feldman* doctrine was meant to address. *Exxon Mobil Corp.*, 544 U.S. at 284. And the Bankruptcy Court's orders are exactly the sort of a "collateral attack" on the justice court's judgment that the doctrine was meant to prohibit. *Shepherd*, 23 F.3d at 924.

## PRAYER

For these reasons, Appellant 2425 WL respectfully requests that the Court reverse

and vacate both the Lien Release Order and the Permanent Injunction.

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455
ccecere@cecerepc.com

*Counsel for Appellant 2425 WL, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 10, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below.

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007
832-529-1999
Fax : 832-529-3393
chris@jonesmurray.com

Charles C. Conrad
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

R. J. Shannon
Shannon & Lee LLP
2100 Travis Street, STE 1525
Houston, TX 77002
713-714-5770
rshannon@shannonleellp.com

Andrew M. Troop
Patrick E. Fitzmaurice
Kwame O. Akuffo
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

*/s/ J. Carl Cecere*
J. Carl Cecere

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

*Certificate of Compliance with Type-Volume Limit,*
*Typeface Requirements, and Type-Style Requirements*

1. This brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. Bankr. 8015(g), it contains 6,184 words.

2. This brief complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) because: it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman (and 14 point for footnotes).

Dated: July 23, 2025

*/s/ J. Carl Cecere*
J. Carl Cecere

*Attorney of Record for Appellant*